IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMAL SPURLOCK<br>10 Westwood Drive<br>New London, Ohio 44851 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| PALLETSOURCE, INC.<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 | )<br>)<br>)<br>)<br>)<br>) | **(Jury Demand Endorsed Hereon)** |
| -and- | )<br>) | |
| SURGE STAFFING, LLC<br>c/o Incorp Services, Inc.<br>9435 Waterstone Boulevard, Suite 140<br>Cincinnati, Ohio 45249 | )<br>)<br>)<br>) | |
| -and- | )<br>) | |
| TRACY TRIMBLE<br>1446 Nichols Street<br>Lorain, Ohio 44053 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Jamal Spurlock, by and through undersigned counsel and pursuant to Civ. R. 15(A), as his Complaint against Defendants, states and avers the following:

## PARTIES

1. Spurlock is a resident of the City of New London, County of Huron, State of Ohio.

2. PalletSource, Inc. ("PalletSource") is a foreign corporation that operates a business located at 55 North Garfield Avenue, Norwalk, Ohio 4857 in the County of Huron, State of Ohio.

3. Surge Staffing, LLC ("Surge") is a foreign limited liability company licensed to conduct business in the State of Ohio with a business location at 26 West Main Street, Norwalk, Ohio 44857 in the County of Huron, State of Ohio.

4. Tracy Trimble is a resident of the State of Ohio.

5. Trimble is and was at all times hereinafter mentioned, a supervisor of Spurlock who acted directly or indirectly in the interest of Surge.

6. Trimble is and was at all times hereinafter mentioned, acting in the course and scope of her employment at Surge.

7. At all times referenced herein, Trimble was an employer within the meaning of R.C. §4112.01(A)(2).

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000 in that Spurlock is alleging federal law claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

9. This Court has personal jurisdiction over Defendants PalletSource and Surge because they are companies registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.

10. This Court has supplemental jurisdiction over Spurlock's state law claims pursuant to 28 U.S.C. § 1367 as Spurlock's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. All material events alleged in this Complaint occurred in Huron County.

13. On February 24, 2021, Spurlock filed his formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Agency Charge No. 532-2021-01123.

14. On February 26, 2021, the EEOC issued and mailed a Notice of Right to Sue letter regarding Spurlock's EEOC Charge of Discrimination.

15. Spurlock has received a Right to Sue letter from the EEOC, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as Exhibit 1.

16. Spurlock has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

17. Spurlock has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

## FACTS

18. Spurlock is a former employee of Surge and PalletSource.

19. Surge hired Spurlock on or about August 7, 2020 as a temporary worker.

20. Surge assigned Spurlock to work at PalletSource as a Pallet Builder on or about August 7, 2020.

21. On or about August 7, 2020 Spurlock reported to work at PalletSource.

22. PalletSource trained Spurlock as a Pallet Builder.

23. PalletSource directed Spurlock's activities while he was employed as a Pallet Builder.

24. Spurlock is an African American.

25. Spurlock was the only African American Pallet Builder on his shift at PalletSource.

26. On August 7, 2020, PalletSource and Trimble required Spurlock to take a drug test for his employment at PalletSource.

27. Spurlock passed his drug test and began working for PalletSource on August 7, 2020.

28. Spurlock worked hard for PalletSource and received compliments from his supervisor about his work ethic.

29. Spurlock had no disciplinary issues regarding his work at PalletSource.

30. On August 10, 2020, Trimble called Spurlock and said that she received a report from PalletSource that Spurlock "looked like he was on drugs," and "smelled like marijuana."

31. PalletSource and Trimble required Spurlock to take another drug test.

32. Spurlock took and passed his second drug test for PalletSource on August 10, 2020.

33. On August 18, 2020, PalletSource and Trimble required Spurlock to take a third drug test.

34. Spurlock complained that the August 18, 2020 test was his third drug test in twelve days. ("Harassment Complaint")

35. PalletSource tested Spurlock for drugs a third time on August 18, 2020.

36. PalletSource told Spurlock that he passed the drug test should return to his job duties.

37. On August 18, 2020, Spurlock complained to his PalletSource supervisor Mike (Last Name Unknown) that he had been forced to take three drug tests in twelve days and that Spurlock believed the frequent tests were based solely on his race. ("Discrimination Complaint To PalletSource")

38. Upon information and belief, PalletSource has a policy to investigate reports of unlawful discrimination.

39. PalletSource did not investigate Spurlock's Discrimination Complaint To PalletSource.

40. Mike, a Caucasian supervisor, told Spurlock that he had only been drug tested once or twice in the year he worked for PalletSource.

41. Spurlock had never seen any of his Caucasian coworkers submit to a drug test for PalletSource.

42. Upon information and belief, PalletSource does not force Caucasian employees to take three drug tests in twelve days.

43. On August 18, 2020, Spurlock complained to Trimble that he had been forced to take three drug tests in twelve days and that Spurlock believed the frequent drug tests were based solely on his race. ("Discrimination Complaint To Surge")

44. Spurlock told Trimble that none of his Caucasian coworkers had been asked to take drug tests while Spurlock was employed at PalletSource.

45. Trimble told Spurlock the frequent drug tests were "just normal procedure."

46. Trimble told Spurlock she did not know why his Caucasian coworkers were not subject to the "normal procedure" of multiple drug tests.

47. Upon information and belief, Surge has a policy to investigate reports of unlawful discrimination.

48. Surge did not investigate Spurlock's Discrimination Complaint to Surge.

49. On August 19, 2020, Trimble told Spurlock that PalletSource did not want Spurlock to return to work.

50. PalletSource terminated Spurlock's employment on August 19, 2020, one day after Spurlock complained about discrimination based on race.

51. PalletSource had no legitimate reason for terminating Spurlock's employment.

52. PalletSource terminated Spurlock's employment based on his race.

53. PalletSource terminated Spurlock's employment in retaliation for his complaints about being targeted for drug tests based on his race.

54. Spurlock asked Trimble to reassign him to a different job with a different employer.

55. Trimble told Spurlock that reassignment to a different employer was not "a good idea."

56. Trimble refused to reassign Spurlock to a different employer.

57. Trimble refused to reassign Spurlock to any employer.

58. Trimble refused to consider Spurlock for any job with any employer.

59. Trimble terminated Spurlock's employment on August 19, 2020, one day after Spurlock complained about discrimination based on race.

60. Trimble had no legitimate reason for terminating Spurlock's employment.

61. Trimble terminated Spurlock's employment based on his race.

62. Trimble terminated Spurlock's employment in retaliation for his complaints about being targeted for drug tests based on his race.

63. The above facts demonstrate that Defendants engaged in a pattern and practice of race discrimination when they subjected Spurlock to three drug tests in twelve days.

64. Defendants engaged in a pattern and practice of unlawful retaliation by terminating Spurlock's employment.

65. As a direct and proximate result of Defendants' conduct, Spurlock has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C.A § 2000e-2

66. Spurlock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

67. Spurlock is African American.

68. Throughout his employment, Spurlock was fully competent to perform his essential job duties.

69. Defendants treated Spurlock differently than similarly situated employees on the basis of Spurlock's race.

70. Defendants' conduct was in violation of 42 U.S.C.A. §2000e-2.

71. As a direct and proximate cause of the Defendants' wrongful conduct, Spurlock has suffered and will continue to suffer damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *ET SEQ.***

72. Spurlock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. Defendants is a qualified employer under R.C. § 4112.01 *et seq*.

74. Spurlock is a qualified employee under the R.C. § 4112.01 *et seq*.

75. Spurlock is African American.

76. Defendants treated Spurlock differently than other similarly situated employees based on his race.

77. Defendants discriminated against Spurlock based on his race.

78. Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Spurlock based on his race.

79. Defendants violated R.C. § 4112.01 *et seq*. by terminating Spurlock based on his race.

80. As a direct and proximate cause of Defendants' conduct, Spurlock suffered and will continue to suffer damages.

**COUNT III: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION**
**(against Defendant Trimble)**

81. Spurlock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

83. Trimble aided, abetted, incited, coerced, and/or compelled PalletSource's discriminatory termination of Spurlock.

84. Trimble aided, abetted, incited, coerced, and/or compelled PalletSource's discriminatory treatment of Spurlock.

85. Trimble violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

86. Spurlock suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

87. As a direct and proximate result of Defendants' conduct, Spurlock has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT V: UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C.A §2000e-3**

88. Spurlock restates each and every prior paragraph of the Complaint, as if it were fully restated herein.

89. Spurlock opposed the unlawful race discrimination he was experiencing during his employment with Defendants.

90. Spurlock reported the harassment and discrimination to his supervisors.

91. As a result of Spurlock opposing unlawful race and disability discrimination and harassment, Defendants retaliated against Spurlock by terminating him.

92. As a result of Spurlock opposing unlawful race and disability discrimination and harassment, Defendant Surge retaliated against Spurlock by refusing Spurlock's request for employment.

93. Defendants' conduct was in violation of 42 U.S.C.A. § 2000e-3.

94. As a direct and proximate cause of Defendants' wrongful conduct, Spurlock has suffered and will continue to suffer damages.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. §4112.01 *et seq.*

95. Spurlock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Spurlock regularly opposed the unlawful race discrimination he was experiencing during his employment with Defendants.

97. Spurlock reported the harassment and discrimination to his supervisors.

98. As a result of Spurlock opposing unlawful race and disability discrimination and harassment, Defendants retaliated against him by terminating him.

99. As a result of Spurlock opposing unlawful race and disability discrimination and harassment, Defendant Surge retaliated against Spurlock by refusing Spurlock's request for employment.

100. Defendants' actions were retaliatory in nature based on Spurlock's opposition to the unlawful discriminatory conduct and harassment.

101. Defendants' actions were in retaliation of Spurlock's protected opposition to discrimination in violation of R.C. §4112.02(I).

102. Defendants violated R.C. §4112.01(I) by terminating Spurlock.

103. Defendants violated R.C. §4112.01(I) by denying Spurlock employment in retaliation for his opposition to discrimination.

104. As a direct and proximate result of Defendants' retaliatory discrimination, Spurlock suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Jamal Spurlock demands from Defendants the following:

(a) Issue a permanent injunction:

    (i) Requiring Defendants to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (iv) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendants to restore Spurlock to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendants of compensatory and monetary damages to compensate Spurlock for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendants in an amount in excess of $25,000;

(e) An award of reasonable attorney's fees and non-taxable costs for Tate's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/Fred M. Bean
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
Water Tower Plaza
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Fred.Bean@spitzlawfirm.com
Taurean.Shattuck@spitzlawfirm.com
David.Byrnes@spitzlawfirm.com

*Attorneys for Plaintiff Jamal Spurlock*

## JURY DEMAND

Plaintiff Jamal Spurlock demands a trial by jury by the maximum number of jurors permitted.

/s/Fred M. Bean
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**